UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

ANGEL VASQUEZ,

*Plaintiff*,

v.

HYUNDAI MARINE & FIRE INSURANCE CO., LTD.,

*Defendant*.

Index No.

**COMPLAINT**

Plaintiff ANGEL VASQUEZ, by and through their undersigned counsel, Law Office of Brett M. Schatz PC, hereby state and allege as follows:

**JURSIDICTION**

1.      Plaintiffs Angel Vasquez ("Mr. Vasquez" or "Plaintiff") is a resident of Queens County, New York.

2.      Upon Information and belief defendant Hyundai Marine & Fire Insurance Co., LTD. is a foreign corporation incorporated in the state of New Jersey with its principal place of business located at 300 Sylvan Ave., Englewood Cliffs, NJ 07632.

3.      The amount in controversy without interest and costs is seven hundred fifty four thousand dollars ($754,000.00) which exceeds the sum or value of the sum specified in 28 U.S.C. 1332.

4.      Venue is proper as the property which is the subject matter of this action is located within the Eastern District of New York and all of the events giving rise to the claim occurred within the East District of New York.

<u>**CONDITIONS PRECEDENT AND NOTICE**</u>

5.      Plaintiff repeats and re-alleges each and every allegation contained in paragraphs marked and number "1" through "4" inclusive hereof, as if the same were more fully set forth at length herein.

6.      All Conditions precedent to recovery have been performed, waived or have occurred.

<u>**FACTS**</u>

7.      Plaintiff repeats and re-alleges each and every allegation contained in paragraphs marked and number "1" through "6" inclusive hereof, as if the same were more fully set forth at length herein.

8.      Plaintiff is the owner of a home located at 62-53 60th Rd. Maspeth, NY 11378 (the "Property").

9.      Plaintiff is the named insured under a property insurance policy – Policy No. DPNY2019060217-23 (the "Policy")- issued by Defendant with effective dates of 6/19/2023 to 6/19/2024 (the "Policy Period") *See* policy attached hereto as **Exhibit "A"**.

10.      The Policy insured the Property against losses from fire.

11.      On or about February 19th, 2024 while the Policy was in full effect the Property suffered a fire loss (the "Loss").

12.      The Loss caused such significant property damage that it required the entire Property to be demolished.

13.      The property damage did not occur by any of the causes excluded by the policy.

14.      Plaintiff gave Defendant timely notice of the fire damage to the Property in February of 2024.

15.      Following Notice the Defendant assigned a Claim No. CHI24930870 (the "Claim").

16. Thereafter, Defendant assigned an adjuster to inspect the Property and adjust the loss.

17. After a brief and cursory investigation, by letter dated April 8th, 2024, the defendant issued a disclaimer of coverage and notice of recission.

18. Defendant failed to conduct a reasonable investigation of the Claim, and improperly denied the claim based on what Defendant falsely claimed was a material misrepresentation on the insurance application for the Property.

19. Defendant has failed and refused to comply with the requirements of the Policy and breached the Policy by failing and refusing, without legitimate cause or justification, to pay the damages due to the Plaintiff in an amount to be determined, but not less than seven hundred fifty four thousand dollars ($754,000.00), plus interest and costs.

20. At all relevant time, Plaintiff had an insurable interest in the Properties as the owner thereof.

21. Plaintiff has fully performed all the terms and conditions required under the Policy.

22. This action is commenced within two years from the date of loss.

23. As of the date of this filing Defendant has not demanded a Proof of Loss and has not triggered any provision of the Policy with respect to any requirement to provide a Proof of Loss.

24. By virtue of the foregoing, Plaintiff has been damaged in an amount to be proved but not less than seven hundred fifty-four thousand dollars ($754,000.00), plus interest and costs, subject to the Policy deductible, or an appropriate amount to be determined by the Court, plus any and all additional damages under the Policy or at law.

**FIRST CAUSE OF ACTION**
**(BREACH OF CONTRACT)**

25. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs marked and numbered "1" through "24" inclusive hereof, as if the same were more fully set forth at length

herein.

26.     Plaintiff has fully performed all the terms and conditions required under the Policy.

27.     Defendant failed to perform its obligations by improperly denying the claim and falsely claiming Plaintiff made a material misrepresentation in their policy application.

28.     Defendant failed and refused to comply with the requirements of the Policy and breached the Policy by failing and refusing, without legitimate cause or justification, to pay the damages due to Plaintiff in an amount to be determined plus interest and costs.

29.     By virtue of the foregoing, Plaintiff has been damaged in an amount to be proved, but not less than seven hundred fifty-four thousand dollars ($754,000.00), plus interest and costs, subject to the Policy deductible, or an appropriate amount to be determined by the Court, plus any and all additional damages under the Policy or at law.

<u>**ATTORNEYS FEES**</u>

30.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs marked and numbered "1" through "29" inclusive hereof, as if the same were more fully set forth at length herein.

31.     As a consequence of Defendant's breaches, Plaintiff has been forced to retain an attorney and seeks reimbursement for its reasonable attorney's fees because Defendant conducted itself in bad faith, had no basis to challenge Plaintiff's Claim and no reasonable insurer would, under these facts, challenge deny or ignore the Claim.

32.     Specifically, the Defendant is engaged in a pattern of denying claims by alleging material misrepresentation when in fact there is no misrepresentation and to the extent there was any misrepresentation it was not material.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment against Defendants as follows:

i. On Plaintiffs' First Cause of Action for Breach of Contract as against Defendants, in an amount to be determined at trial, but in no event less than seven hundred fifty-four thousand dollars ($754,000.00) (subject to the policy deductible); and

ii. Interest from the date of loss to the date of the award and payment of final judgment herein;

iii. Reasonable attorney's fees;

iv. Costs, expert and witness fees; and

v. For such other and further relief as to the Court seem appropriate and just

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable

Dated: August 19th, 2024
New York, NY

LAW OFFICE OF BRETT M. SCHATZ PC

Brett Schatz, Esq.
Attorney for Plaintiff
ANGEL VASQUEZ
1345 6th Ave. 2nd Floor
New York, NY 10105
Tel: 212-631-7463
Fax: 646-786-3325
bschatz@bmsfirm.com

6

EXHIBIT "A"

# Hyundai Marine & Fire Insurance Co., Ltd. (U.S. Branch)

**Hyundai Insurance**

300 Sylvan Avenue
Englewood Cliffs,
NJ 07632

(ED. 11 11)

# Signature Page

YOUR COMPLETE POLICY CONSISTS OF THE POLICY JACKET WITH THE COVERAGE FORMS, DECLARATIONS, AND ENDORSEMENTS, IF ANY.

IN WITNESS WHEREOF, Hyundai Marine and Fire Insurance Co., Ltd. (U.S. Branch) has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of Hyundai Marine and Fire Insurance Co., Ltd. (U.S. Branch), of which principal executive office address is 300 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

President

Secretary

(Ed. 09 11)

 **Hyundai Insurance**

# DWELLING PROGRAM
# POLICY DECLARATIONS

| | |
|---|---|
| Issue Date: 04/18/2023 | |

**Company Name:** Hyundai Marine & Fire Insurance Co., Ltd. (U.S. Branch)
**Principal Executive Office Address:** 300 Sylvan Avenue Englewood Cliffs, New Jersey 07632

| | |
|---|---|
| Agency Name: C&M First Services Inc.<br>Agency Address: 1560 Broadway, Suite 800, New York, NY 10036, ☎ 212-221-9630 | Code: GA0001 |
| Producer Name: Century Max Inc<br>Producer Address: 38-08 Union Street, Suite #2I, Flushing, NY 11354, ☎ 718-886-7070 | Code: BR0001 |
| **Policy Period:** 12:01 A.M. STANDARD TIME AT THE DESCRIBED LOCATION<br>Effective Date: 06/19/2023      Expiration Date: 06/19/2024 | **Policy Number:**<br>DPNY2019060217-23 |

**Named Insured:** Angel Vasquez

**Insured Location Address:**
6253 60th Rd, Maspeth, NY 11378

Mailing address (if different from Insured Location Address):
20 Trolley Rd, Montrose, NY 10548

We will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions.

This insurance applies to the Described Location, Coverage for which a Limit of Liability is shown for which a Premium is stated.

| Coverage Section I – Property: | Limit of Liability | Premium |
|---|---|---|
| 1. Dwelling (Coverage A) | $580,000 | $839.00 |
| 2. Other Structures (Coverage B) | $58,000 | Included |
| 3. Personal Property (Coverage C) | | Not Included |
| 4. Fair Rental Value (Coverage D) [1/12 per month] | $116,000 | Included |
| 5. Additional Living Expense (Coverage E) [up to 25%/month] | Combined limit with Coverage D limit | Included |
| **Coverage Section II – Liability:** | **Limit of Liability** | **Premium** |
| 1. Personal Liability (Coverage L) | $1,000,000 / occurrence | $279.00 |
| 2. Medical Payments to Others (Coverage M) | $1,000 / person | Included |

| Premium & Other Charges: | | |
|---|---|---|
| Basic Policy Premium | | $1,118.00 |
| Additional Coverages | Water Backup/Sump Pump | $50.00 |
| Additional Credits or Charges | | $0.00 |
| Policy Total Premium | | $1,168.00 |
| **Total Annual Premium** | If Prepaid (100%) | $1,168.00 |
| | If paid in Installments | Deposit At Inception | $0.00 |
| | | At 1st Installment: | $0.00 |
| | | At 2nd Installment: | $0.00 |
| | | At 3rd Installment: | $0.00 |
| | | Total Premium | $0.00 |

Installment Plans: Two Installments incl. 50% Deposit at Inception, Four Installments incl. 25% Deposit at Inception


**Hyundai Insurance**

| Deductible(s): | |
|---|---|
| Windstorm | () of Coverage A limit or Higher Fixed Dollar |
| Catastrophe Windstorm | 2% ($11,600) of Coverage A limit or Higher Fixed Dollar |
| Theft | |
| All Other Perils $2,500 | |

Special State Provisions:

Information Used to Rate Your Premium:

| Protection Class / Territory | Construction Type | Renovation Year | Protective Device |
|---|---|---|---|
| 1 / 04 | Frame | Heating Year: 2009<br>Plumbing Year: 2008<br>Roof Year: 2008<br>Wiring Year: 2009 | |
| **No. of Families** | **Occupancy** | **Usage** | **Year Built** |
| 2 | Tenant | Primary | 1920 |

Mortgagee
Loan No. 7190203500
PHH Mortgage Services ISAOA
PO Box 5954
Springfield, OH 45501

Other Additional Interest

**Forms, Endorsements and other Enclosures:**

| Form Number | Edition | Title |
|---|---|---|
| HI-NY-12 | 11 11 | COVER LETTER |
| HI-NY-13 | 11 11 | POLICY JACKET |
| HI-NY-02 | 09 11 | SIGNATURE PAGE |
| HI-NY-14 | 11 11 | NOTICE OF PRIVACY POLICY |
| IL N 160 | 09 08 | FLOOD MUDSLIDE EXCLUSION |
| IL P 001 | 01 04 | U.S. TREASURY DEPT OFFICE OF FOREIGN ASSETS CONTROL("OFAC") NOTICE |
| HI-NY-10 | 12 11 | CATASTROPHE WINDSTORM DEDUCTIBLE DISCLOSURE NOTICE - NEW YORK |
| DP 00 02 | 12 02 | DWELLING PROPERTY 2 BROAD FORM |
| DL 25 31 | 02 10 | SPECIAL PROVISIONS – NEW YORK |
| DL 24 11 | 12 02 | PREMISES LIABILITY NON OWNER OPERATED DWELLING |
| DP 05 31 | 12 02 | MODIFIED FUNCTIONAL REPLACEMENT COST LOSS SETTLEMENT |
| DP 01 31 | 12 04 | SPECIAL PROVISIONS NEW YORK |
| DL 24 01 | 07 14 | PERSONAL LIABILITY |
| DP 16 09 | 01 09 | Water Exclusion Endorsement |
| DL 24 26 | 07 88 | NO COVERAGE FOR HOME DAY CARE BUSINESS |
| DL 24 15 | 12 04 | WORKERS COMPENSATION CERTAIN RESIDENCE EMPLOYEES NY |
| DP 23 74 | 01 09 | WATER BACK-UP AND SUMP DISCHARGE OR OVERFLOW- NEW YORK |
| DP 03 14 | 12 04 | WINDSTORM DEDUCTIBLE NEW YORK CATASTROPHE PERCENTAGE AND NON-CATASTROPHE |
| DL 24 03 | 07 14 | PERSONAL LIABILITY SCHEDULE |
| DP 04 32 | 12 02 | DEFERRED PREMIUM PAYMENT |





**Hyundai
Insurance**

## NOTICE OF PRIVACY POLICY

In the course of our business relationship with you, we collect information about you that is necessary to provide you with our products and services. We treat this information as confidential and recognize the importance of protecting it. We value your confidence in us.

### OUR PRIVACY POLICY

- We will not sell information about our customers.
- We require any person or organization providing products or services on our behalf to agree in writing to protect Hyundai Insurance customer information.
- We do not allow anyone doing business on our behalf to use our customer information for their own marketing purposes.
- We do not share customer medical information with any of our affiliates unless:
  - You expressly authorize it; or
  - It is permitted or required by law; or
  - Your insurance policy with us permits us to do so.
- We afford all of our future and former customers the same protections as existing customers with respect to the use of personal information.

### INFORMATION WE MAY COLLECT

We need to collect and maintain information about you to in order to provide you with the coverage, product or service your request and to properly service your account.

We may collect certain information ("nonpublic personal information") about you and the members of your household ("you"), as permitted by law, from the following sources:
- Information you supply on applications or other forms, such as your social security number, assets, income and property information;
- Information about your transactions with us, our affiliates or others, such as your policy coverage, premiums and payment history;
- Information we receive from a consumer reporting agency or insurance support organization, such as motor vehicle records, credit report information and claims history; and
- Other sources.

At Hyundai Insurance, our customers are our most valued assets. Protecting your privacy is important to us. We restrict access to personal information about you to those individuals, such as our employees and agents, who provide you with our products and services. We require those individuals to whom we permit access to your customer information to protect it and keep it confidential. We maintain physical, electronic and procedural safeguards that comply with federal standards to protect your information.

### HOW WE USE INFORMATION ABOUT YOU

We use customer information collected,, to underwrite and price your policies and products, process your claims, for proper billing purposes and to properly service your accounts.

## INFORMATION DISCLOSURE

We may share information about you with persons or groups inside and outside of our company for normal business purposes and as permitted or required by law. We may also share information about you with companies with which we have marketing or other service agreements or with whom we do joint marketing. These agreements allow us to provide you with a greater selection of insurance and financial products.

We may also share information about you with consumer reporting agencies and with other persons or companies as necessary to handle any of your claims and to protect against fraud or unauthorized transactions.

## TO LIMIT THE SHARING OF INFORMATION WITHIN OUR AFFILIATED GROUP

At Hyundai Insurance, our goal is to provide you with the best possible service. When it comes to your personal information, it is your decision to allow or not to allow, the sharing of your consumer report information with our affiliates. You may opt out of such disclosures, that is, you may direct us not to make those disclosures – other than the disclosures that are permitted by law. If you wish to opt out of disclosures to our affiliates, you may do so by following the procedure explained in the enclosed Opt-Out Form. You may opt out only by returning the Opt-out Form. We will implement your request within a reasonable time.

If it is your decision not to opt out and to allow sharing of your information with our affiliates, you do not need to complete the Opt-Out Form or respond in any way.

Thank you for choosing Hyundai Insurance. We value you as a customer and appreciate the opportunity to serve you.

HI-NY-14

(ED 11 11)

# OPT-OUT FORM

If you wish us to stop sharing your information with our affiliates, please fill out this Opt-Out Form and mail it to us via enclosed pre-paid envelope to:

> Hyundai Marine & Fire Insurance Co., Ltd. (U.S. Branch)
> PO BOX 1017
> Englewood Cliffs, NJ 07632-9911

Check the blanks that apply to you

☐ Do not share information about me or any joint account holder with your affiliates of my credit reports, financial or personal information from my applications, or information from other sources.

☐ Do not share information about me or any joint account holder with unrelated companies or persons so that they may offer their products or services to me or for other purposes.

Name: Angel Vasquez

Address: 20 Trolley Rd
Montrose, NY 10548

Signature:

If you already have notified us about your privacy choices, then you need not send this form to us again.

# FLOOD/MUDSLIDE EXCLUSION
# ADVISORY NOTICE TO POLICYHOLDERS – NEW YORK

> No coverage is provided by this notice nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations Page for complete information on the coverages you are provided. If there is any conflict between the policy and this Advisory Notice to Policyholders, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

Your policy does not insure for loss caused directly or indirectly by:

- Flood; or

- Mudslide;

Caused by or resulting from human or animal forces or any act of nature.

Such loss is excluded:

- Regardless of any other cause or event contributing concurrently or in any sequence to the loss; and

- Whether or not the loss event results in widespread damage or affects a substantial area.

However, the exclusion of flood does not apply to direct loss by fire or explosion resulting from flood, and the exclusion of mudslide does not apply to direct loss by fire or explosion that ensues but we will pay only for the ensuing loss.

Insurance for flood damage and damage caused by mudslide may be available through a separate flood insurance policy issued in accordance with the National Flood Insurance Program (NFIP). Flood insurance under the NFIP can provide both structure and contents coverage. Your insurance agent or company representative will be able to provide you with information regarding the availability of such flood insurance.

The NFIP may be contacted by phone at 1-888-379-9531, or visit the website below for more information:

http://www.fema.gov/business/nfip/

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

# CATASTROPHE WINDSTORM DEDUCTIBLE DISCLOSURE NOTICE
# NEW YORK

### YOUR POLICY IS SUBJECT TO A HURRICANE DEDUCTIBLE.

**THIS DISCLOSURE NOTICE DOES NOT PROVIDE COVERGE NOR DOES THIS NOTICE REPLACE ANY PROVISIONS OF YOUR POLICY. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED. IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS NOTICE, THE PROVISIONS OF THE POLICY WILL PREVAIL.**

Your policy insures against the peril of WINDSTORM. When covered property is damaged or destroyed by windstorm, a windstorm deductible will apply to the total of the loss for Section I Property Coverages except for Coverage D of Home Owner Policy and Coverage D & E of Dwelling Policy. Any windstorm loss payable under Coverage D – Loss of use for Home Owner Policy and Coverage D - Fair Rental Value or Coverage E – Additional Living Expense for Dwelling Policy may be subject to a lower deductible. We have briefly outlined below the key points associated with the windstorm deductible.

With respect to the peril of Windstorm, we may pay only that part of the total of all loss payable under Coverages that exceeds the windstorm deductible amount noted below.

Your policy contains a  non catastrophe windstorm deductible  and a catastrophe windstorm deductible that are shown on the Policy Declaration Page included with this policy. A higher percentage or fixed dollar Catastrophe windstorm deductible applies to windstorm loss that occurs within a period of 12 hours before or 12 hours after the storm which makes landfall anywhere in the New York State as a declared Category 2, 3, 4, or 5 hurricane. "Declared" means declared by the National Weather Service. A non catastrophe  windstorm deductible applies whenever winds do not attain Category 2, 3, 4, or 5 hurricane by the National Weather Service at landfall anywhere in New York State.

A category 2 storm is categorized in the Saffir/Simpson Hurricane Scale as a storm that originates in the tropics which either attains a sustained wind speed of at least 96 miles per hour (mph) or resulted in a storm surge of at least 6 feet above normal, whether or not wind speed of 96 mph is attained. Category 3, 4 and 5 storms have greater associated wind speeds and storm surge as follows:

| Category | Minimum Speed | Surge |
|---|---|---|
| 3 | 111mph | 9 -12 Feet |
| 4 | 131mph | 13 – 18 Feet |
| 5 | Greater than 155mph | Greater than 18 Feet |

**Your Catastrophe Windstorm Deductible:**
Percentage Deductible : 2%      (Actual dollar amount $11,600     )
or
Higher Fixed Dollar Deductible :

The actual dollar amount of the percentage windstorm deductible is computed by multiplying the Coverage A limit of liability by the percentage amount. This deductible is shown on the declaration page of your policy. If the Coverage A limit of liability is changed during the policy period, the actual dollar amount of the deductible will be revised to reflect the new limit of liability.

**Because you are responsible for the portion of the loss up to the deductible amount, the premium you would have otherwise paid has been reduced.**

Policy Number : DPNY2019060217-23

Please see below for examples of how a 2% Catastrophe windstorm deductible would apply to a covered loss by Category 2 Hurricane:

- 2% catastrophe windstorm deductible and $1,000 a fixed dollar Non catastrophe Windstorm deductible

| Coverage | Limit of Liability | Deductible | Amount of Loss | |
|---|---|---|---|---|
| | | | Scenario 1 | Scenario 2 |
| A | $100,000 | 2% ($2,000) | $7,500 | $1,500 |
| B | $10,000 | | $1,350 | Nil |
| C | $50,000 | | $3,000 | Nil |
| | | | $11,850 | $1,500 |

Loss Scenario 1)
    Amount we will pay for the loss: $9,850 = $11,850 - $2,000

Under this loss scenario, we would pay $9,850, since the $11,850 loss amount is greater than your actual dollar amount of catastrophe windstorm deductible $2,000.

Loss Scenario 2)
    Amount we will pay for the loss: Nil

Under this loss scenario, we would not pay for any amount of the loss, since the $1,500 loss amount is less than your actual dollar amount of catastrophe windstorm deductible $2,000.

**NOTE :**

1. If the circumstance of windstorm loss do not apply to category 2, 3, 4, and 5 (as described above), a fixed dollar Non catastrophe Windstorm deductible is the deductible that applies to the windstorm loss.
Under Scenario 1, if the loss was caused by windstorm lower than hurricane category 2, the fixed dollar Non Catastrophe Windstorm deductible will be applied. In this case, the amount we will pay for the loss is $10,850 (= $11,850 - $1,000)

**2. Your policy does not insure against such water damage as flood, surface water, waves, tidal water, or overflow of a body of water. If you are interested in protection against flood, call your agent or broker to see if your property is eligible for a flood insurance policy.**

# DWELLING PROPERTY 2 – BROAD FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance.

## DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable that exceeds the deductible amount shown in the Declarations.

## COVERAGES

This insurance applies to the Described Location, Coverages for which a Limit of Liability is shown and Perils Insured Against for which a Premium is stated.

### A. Coverage A – Dwelling

1. We cover:

   a. The dwelling on the Described Location shown in the Declarations, used principally for dwelling purposes, including structures attached to the dwelling;

   b. Materials and supplies located on or next to the Described Location used to construct, alter or repair the dwelling or other structures on the Described Location; and

   c. If not otherwise covered in this policy, building equipment and outdoor equipment used for the service of and located on the Described Location.

2. We do not cover land, including land on which the dwelling is located.

### B. Coverage B – Other Structures

1. We cover other structures on the Described Location, set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line or similar connection.

2. We do not cover:

   a. Land, including land on which the other structures are located;

   b. Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

   c. Other structures used in whole or in part for commercial, manufacturing or farming purposes. However, we do cover a structure that contains commercial, manufacturing or farming property solely owned by you or a tenant of the dwelling provided that such property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure; or

   d. Gravemarkers, including mausoleums.

### C. Coverage C – Personal Property

1. **Covered Property**

   We cover personal property, usual to the occupancy as a dwelling and owned or used by you or members of your family residing with you while it is on the Described Location. After a loss and at your request, we will cover personal property owned by a guest or servant while the property is on the Described Location.

2. **Property Not Covered**

   We do not cover:

   a. Accounts, bank notes, bills, bullion, coins, currency, deeds, evidences of debt, gold other than goldware, letters of credit, manuscripts, medals, money, notes other than bank notes, passports, personal records, platinum other than platinumware, securities, silver other than silverware, tickets, stamps, scrip, stored value cards and smart cards;

   b. Animals, birds or fish;

   c. Aircraft meaning any contrivance used or designed for flight including any parts whether or not attached to the aircraft.

      We do cover model or hobby aircraft not used or designed to carry people or cargo;

   d. Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

   e. Motor vehicles or all other motorized land conveyances.

      (1) This includes:

         (a) Their accessories, equipment and parts; or

**(b)** Any device or instrument for the transmitting, recording, receiving or reproduction of sound or pictures which is operated by power from the electrical system of motor vehicles and all other motorized land conveyances, and its accessories. Accessories include antennas, tapes, wires, records, discs or other media that can be used with any device or instrument described above.

The exclusion of property described in **(a)** and **(b)** above applies only while such property is in or upon the vehicle or conveyance.

**(2)** We do cover motor vehicles or other motorized land conveyances not required to be registered for use on public roads or property which are:

**(a)** Used solely to service the Described Location; or

**(b)** Designed to assist the handicapped;

**f.** Watercraft of all types, other than rowboats and canoes;

**g.** Data, including data stored in:

**(1)** Books of account, drawings or other paper records; or

**(2)** Computers and related equipment;

We do cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market;

**h.** Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds;

**i.** Water or steam; or

**j.** Gravemarkers, including mausoleums.

**3. Property Removed To A Newly Acquired Principle Residence**

If you remove personal property from the Described Location to a newly acquired principal residence, the Coverage **C** limit of liability will apply at each residence for the 30 days immediately after you begin to move the property there. This time period will not extend beyond the termination of this policy. Our liability is limited to the proportion of the limit of liability that the value at each residence bears to the total value of all personal property covered by this policy.

**D. Coverage D – Fair Rental Value**

**1.** If a loss to property described in Coverage **A, B** or **C** by a Peril Insured Against under this policy makes that part of the Described Location rented to others or held for rental by you unfit for its normal use, we cover the fair rental value of that part of the Described Location rented to others or held for rental by you less any expenses that do not continue while that part of the Described Location rented or held for rental is not fit to live in.

Payment will be for the shortest time required to repair or replace that part of the Described Location rented or held for rental.

**2.** If a civil authority prohibits you from use of the Described Location as a result of direct damage to a neighboring location by a Peril Insured Against in this policy, we cover the Fair Rental Value loss for no more than two weeks.

**3.** The periods of time referenced above are not limited by the expiration of this policy.

**4.** We do not cover loss or expense due to cancellation of a lease or agreement.

**E. Coverage E – Additional Living Expense**

**1.** If a loss to property described in Coverage **A, B** or **C** by a Peril Insured Against under this policy makes the Described Location unfit for its normal use, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the Described Location or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

**2.** If a civil authority prohibits you from use of the Described Location as a result of direct damage to a neighboring location by a Peril Insured Against in this policy, we cover the Additional Living Expense loss for no more than two weeks.

**3.** The periods of time referenced above are not limited by the expiration of this policy.

**4.** We do not cover loss or expense due to cancellation of a lease or agreement.

**F. Other Coverages**

**1. Other Structures**

You may use up to 10% of the Coverage **A** limit of liability for loss by a Peril Insured Against to other structures described in Coverage **B**.

This coverage is additional insurance.

## 2. Debris Removal

We will pay your reasonable expense for the removal of:

a. Debris of covered property if a Peril Insured Against causes the loss; or

b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property.

## 3. Improvements, Alterations And Additions

If you are a tenant of the Described Location, you may use up to 10% of the Coverage **C** limit of liability for loss by a Peril Insured Against to improvements, alterations and additions, made or acquired at your expense, to that part of the Described Location used only by you.

This coverage is additional insurance.

## 4. World-Wide Coverage

You may use up to 10% of the Coverage **C** limit of liability for loss by a Peril Insured Against to property covered under Coverage **C** except rowboats and canoes, while anywhere in the world.

Use of this coverage reduces the Coverage **C** limit of liability for the same loss.

## 5. Rental Value And Additional Living Expense

You may use up to 20% of the Coverage **A** limit of liability for loss of both fair rental value as described in Coverage **D** and additional living expense as described in Coverage **E**.

This coverage is additional insurance.

## 6. Reasonable Repairs

a. In the event that covered property is damaged by a Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage.

b. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by a Peril Insured Against. This coverage does not:

(1) Increase the limit of liability that applies to the covered property; or

(2) Relieve you of your duties, in case of a loss to covered property, as set forth in Condition **D.2.**

## 7. Property Removed

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

## 8. Trees, Shrubs And Other Plants

We cover trees, shrubs, plants or lawns, on the Described Location for loss caused by the following Perils Insured Against:

a. Fire or lightning;

b. Explosion;

c. Riot or civil commotion;

d. Aircraft;

e. Vehicles not owned or operated by you or a resident of the Described Location; or

f. Vandalism or malicious mischief, including damage during a burglary or attempted burglary, but not theft of property.

The limit of liability for this coverage will not be more than 5% of the Coverage **A** limit of liability, or more than $500 for any one tree, shrub or plant. We do not cover property grown for commercial purposes.

This coverage is additional insurance.

## 9. Fire Department Service Charge

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

## 10. Collapse

a. With respect to this Other Coverage:

(1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

(2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

**(3)** A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

**(4)** A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**b.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

**(1)** The Perils Insured Against in this policy;

**(2)** Decay that is hidden from view, unless the presence of such decay is known to you prior to collapse;

**(3)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to you prior to collapse;

**(4)** Weight of contents, equipment, animals or people;

**(5)** Weight of rain which collects on a roof; or

**(6)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

**c.** Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **b.(2)** through **(6)** above unless the loss is a direct result of the collapse of a building or any part of a building.

**d.** This coverage does not increase the limit of liability that applies to the damaged covered property.

**11. Glass Or Safety Glazing Material**

**a.** We cover:

**(1)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

**(2)** The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

**(3)** The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

**b.** This coverage does not include loss:

**(1)** To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

**(2)** On the Described Location if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided for in **a.(2)** above. A dwelling being constructed is not considered vacant.

**c.** This coverage does not increase the limit of liability that applies to the damaged property.

**12. Ordinance Or Law**

**a.** The Ordinance Or Law limit of liability determined in **b.** or **c.** below will apply with respect to the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

**(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

**(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

**(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

**b.** If you are an owner of a Described Location, and that location:

**(1)** Is insured for Coverage **A** or Unit-Owners Building Items, you may use up to 10% of the limit of liability that applies to Coverage **A** or Unit-Owners Building Items at each Described Location; or

**(2)** Is not insured for Coverage **A** or Unit-Owners Building Items, you may use up to 10% of the total limit of liability that applies to Coverage **B** at each Described Location.

**c.** If you are a tenant of a Described Location, you may use up to 10% of the limit of liability that applies to Improvements, Alterations And Additions at each Described Location. Also, the words "covered building" used throughout this Other Coverage **12.** Ordinance Or Law, refer to property at such a Described Location covered under Other Coverage **3.** Improvements, Alterations And Additions.

**d.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

**e.** We do not cover:

**(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

**(2)** The costs to comply with any ordinance or law which requires you or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

## PERILS INSURED AGAINST

We insure for direct physical loss to the property covered caused by a peril listed below unless the loss is excluded in the General Exclusions.

**1. Fire Or Lightning**

**2. Windstorm Or Hail**

This peril does not include loss:

**a.** To the inside of a building or the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening; or

**b.** To the following property when outside of the building:

**(1)** Awnings, signs, radio or television antennas or aerials including lead-in wiring, masts or towers;

**(2)** Canoes and rowboats; or

**(3)** Trees, shrubs, plants or lawns.

**3. Explosion**

**4. Riot Or Civil Commotion**

**5. Aircraft**

This peril includes self-propelled missiles and spacecraft.

**6. Vehicles**

This peril does not include loss to a fence, driveway, or walk caused by a vehicle owned or operated by you or a resident of the Described Location.

**7. Smoke**

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**8. Vandalism Or Malicious Mischief**

This peril does not include loss:

**a.** By pilferage, theft, burglary or larceny; or

**b.** To property on the Described Location, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

**9. Damage By Burglars**

This peril means damage to covered property caused by burglars.

This peril does not include:

**a.** Theft of property; or

**b.** Damage caused by burglars to property on the Described Location if the dwelling has been vacant for more than 60 consecutive days immediately before the damage occurs. A dwelling being constructed is not considered vacant.

**10. Falling Objects**

This peril does not include loss:

**a.** To the inside of a building or property contained in the building unless the roof or an outside wall of the building is first damaged by a falling object.

**b.** To outdoor radio and television antennas and aerials including their lead-in wiring, masts and towers, outdoor equipment, awnings and fences.

Damage to the falling object itself is not covered.

## 11. Weight Of Ice, Snow Or Sleet

This peril means weight of ice, snow or sleet which causes damage to a building or property contained in the building.

This peril does not include loss to an awning, fence, patio, pavement, swimming pool, foundation, retaining wall, bulkhead, pier, wharf or dock.

## 12. Accidental Discharge Or Overflow Of Water Or Steam

**a.** This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance. We also pay to tear out and replace any part of a building, or other structure, on the Described Location, but only when necessary to repair the system or appliance from which the water or steam escaped. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the Described Location.

**b.** This peril does not include loss:

**(1)** To a building caused by constant or repeated seepage or leakage over a period of weeks, months or years;

**(2)** On the Described Location, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

**(3)** To the system or appliance from which the water or steam escaped;

**(4)** Caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing below; or

**(5)** On the Described Location caused by accidental discharge or overflow which occurs off the Described Location.

**c.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**d.** General Exclusion **3.** Water Damage, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

## 13. Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss caused by or resulting from freezing except as provided in Perils Insured Against **14.** Freezing below.

## 14. Freezing

**a.** This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

**(1)** Maintain heat in the building; or

**(2)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

**b.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

## 15. Sudden And Accidental Damage From Artificially Generated Electrical Current

This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

## 16. Volcanic Eruption

This peril does not include loss caused by earthquake, land shock waves or tremors.

## GENERAL EXCLUSIONS

We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

1. **Ordinance Or Law**

   Ordinance Or Law means any ordinance or law:

   a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **1.a.** does not apply to the amount of coverage that may be provided under Other Coverage **12.** Ordinance Or Law;

   b. The requirements of which result in a loss in value to property; or

   c. Requiring you or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

   This Exclusion **1.** applies whether or not the property has been physically damaged.

2. **Earth Movement**

   Earth Movement means:

   a. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

   b. Landslide, mudslide or mudflow;

   c. Subsidence or sinkhole; or

   d. Any other earth movement including earth sinking, rising or shifting;

   caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

3. **Water Damage**

   Water Damage means:

   a. Flood, surface water, waves, tidal water, overflow of a body of water or spray from any of these, whether or not driven by wind;

   b. Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

   c. Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

   caused by or resulting from human or animal forces or any act of nature.

   Direct loss by fire or explosion resulting from water damage is covered.

4. **Power Failure**

   Power Failure means the failure of power or other utility service if the failure takes place off the Described Location. But if the failure of power or other utility service results in a loss, from a Peril Insured Against on the Described Location, we will pay for the loss caused by that Peril Insured Against.

5. **Neglect**

   Neglect means your neglect to use all reasonable means to save and preserve property at and after the time of a loss.

6. **War**

   War includes the following and any consequence of any of the following:

   a. Undeclared war, civil war, insurrection, rebellion or revolution;

   b. Warlike act by a military force or military personnel;

   c. Destruction or seizure or use for a military purpose.

   Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

7. **Nuclear Hazard**

   This Exclusion **7.** pertains to Nuclear Hazard to the extent set forth in the Nuclear Hazard Clause of the Conditions.

8. **Intentional Loss**

   Intentional Loss means any loss arising out of any act you or any person or organization named as an additional insured commits or conspires to commit with the intent to cause a loss.

   In the event of such loss, neither you nor any such person or organization is entitled to coverage, even those who did not commit or conspire to commit the act causing the loss.

9. **Governmental Action**

   Governmental Action means the destruction, confiscation or seizure of property described in Coverage **A**, **B** or **C** by order of any governmental or public authority.

   This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

**CONDITIONS**

**A. Policy Period**

   This policy applies only to loss which occurs during the policy period.

## B. Insurable Interest And Limit Of Liability

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

1. For an amount greater than the interest of a person insured under this policy at the time of loss; or

2. For more than the applicable limit of liability.

## C. Concealment Or Fraud

We provide coverage to no persons insured under this policy if, whether before or after a loss, one or more persons insured under this policy have:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

## D. Duties After Loss

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you or your representative:

1. Give prompt notice to us or our agent;

2. Protect the property from further damage. If repairs to the property are required, you must:

   a. Make reasonable and necessary repairs to protect the property; and

   b. Keep an accurate record of repair expenses;

3. Cooperate with us in the investigation of a claim;

4. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

5. As often as we reasonably require:

   a. Show the damaged property;

   b. Provide us with records and documents we request and permit us to make copies; and

   c. Submit to examination under oath, while not in the presence of another named insured, and sign the same;

6. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth to the best of your knowledge and belief:

   a. The time and cause of loss;

   b. Your interest and that of all others in the property involved and all liens on the property;

   c. Other insurance which may cover the loss;

   d. Changes in title or occupancy of the property during the term of the policy;

   e. Specifications of damaged buildings and detailed repair estimates;

   f. The inventory of damaged personal property described in **D.3.**;

   g. Receipts for additional living expenses incurred and records that support the fair rental value loss.

## E. Loss Settlement

In this Condition **E.**, the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law except to the extent that coverage for these increased costs is provided in Other Coverage **F.12.** Ordinance Or Law. Covered property losses are settled as follows:

1. Property of the following types:

   a. Personal property;

   b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

   c. Structures that are not buildings;

   at actual cash value at the time of loss but not more than the amount required to repair or replace.

2. Buildings under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

   a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

      (1) The limit of liability under this policy that applies to the building;

      (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

      (3) The necessary amount actually spent to repair or replace the damaged building.

If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

**b.** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

**(1)** The actual cash value of that part of the building damaged; or

**(2)** That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

**c.** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

**(1)** Excavations, footings, foundations, piers or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

**(2)** Those supports in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

**(3)** Underground flues, pipes, wiring and drains.

**d.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and **b.** above.

However, if the cost to repair or replace the damage is both:

**(1)** Less than 5% of the amount of insurance in this policy on the building; and

**(2)** Less than $2,500;

we will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

**e.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **E. Loss Settlement**, provided you notify us of your intent to do so within 180 days after the date of loss.

**F. Loss To A Pair Or Set**

In case of loss to a pair or set we may elect to:

**1.** Repair or replace any part to restore the pair or set to its value before the loss; or

**2.** Pay the difference between actual cash value of the property before and after the loss.

**G. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the Described Location is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**1.** Pay its own appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

**H. Other Insurance And Service Agreement**

If property covered by this policy is also covered by:

**1.** Other fire insurance, we will pay only the proportion of a loss caused by any peril insured against under this policy that the limit of liability applying under this policy bears to the total amount of fire insurance covering the property; or

**2.** A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

### I. Subrogation

You may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, the person insured must sign and deliver all related papers and cooperate with us.

### J. Suit Against Us

No action can be brought against us unless there has been full compliance with all of the terms under this policy and the action is started within two years after the date of loss.

### K. Our Option

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

### L. Loss Payment

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

1. Reach an agreement with you;
2. There is an entry of a final judgment; or
3. There is a filing of an appraisal award with us.

### M. Abandonment Of Property

We need not accept any property abandoned by you.

### N. Mortgage Clause

1. If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:
   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;
   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Paragraphs **G.** Appraisal, **J.** Suit Against Us and **L.** Loss Payment also apply to the mortgagee.

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:
   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or
   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

### O. No Benefit To Bailee

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

### P. Cancellation

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.
   a. When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.
   b. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

   (1) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

   (2) If the risk has changed substantially since the policy was issued.

   This can be done by letting you know at least 30 days before the date cancellation takes effect.

   d. When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

3. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

4. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

## Q. Nonrenewal

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

## R. Liberalization Clause

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of this policy; or

2. An amendatory endorsement.

## S. Waiver Or Change Of Policy Provisions

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

## T. Assignment

Assignment of this policy will not be valid unless we give our written consent.

## U. Death

If you die, we insure:

1. Your legal representatives but only with respect to the property of the deceased covered under the policy at the time of death;

2. With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

## V. Nuclear Hazard Clause

1. "Nuclear Hazard" means any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

2. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

3. This policy does not apply to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

## W. Recovered Property

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

## X. Volcanic Eruption Period

One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

## Y. Loss Payable Clause

If the Declarations show a loss payee for certain listed insured personal property, that person is considered an insured in this policy with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL PROVISIONS – NEW YORK

## LIABILITY COVERAGES

### A. Coverage L – Personal Liability

Paragraph **2.** is replaced by the following:

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate.

## EXCLUSIONS

### E. Coverage L – Personal Liability Coverage And Coverage M – Medical Payments To Others

Paragraph **1.** is replaced by the following:

### 1. Expected Or Intended Injury

"Bodily injury" or "property damage" which is expected or intended by one or more "insureds".

## CONDITIONS

### C. Duties After "Occurrence"

The first paragraph and Paragraph **1.** are replaced by the following:

### C. Duties After "Occurrence"

In case of an "occurrence", you or another "insured" or someone acting for the "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us, except as provided for in Paragraph **1.** You will help us by seeing that these duties are performed. Any written notice given by any claimant to us or any of our agents in this state, containing particulars sufficient to identify you or another "insured", will be deemed notice to us.

1. Give written notice to us or any of our agents in this state as soon as reasonably possible, which sets forth:

   a. The identity of the policy and the "named insured" shown in the Declarations;

   b. Reasonably available information on the time, place and circumstances of the "occurrence"; and

   c. Names and addresses of any claimants and witnesses;

Failure to give notice to us as required under this policy shall not invalidate any claim made by the "insured", injured person or any other claimant, unless the failure to provide such timely notice is prejudicial to us. However, no claim made by the "insured", injured person or any other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

### D. Duties Of An Injured Person – Coverage M – Medical Payments To Others

Paragraph **1.a.** is replaced by the following:

1. The injured person or someone acting for the injured person will:

   a. Give us or any of our agents in this state written proof of claim, under oath if required, as soon as is practical; and

### F. Suit Against Us

The following provisions are added:

4. If we deny coverage or do not admit liability for damages arising from "bodily injury" caused by an "occurrence" because an "insured" or the injured person, someone acting for the injured person or other claimant fails to give us or any of our agents in this state notice as soon as reasonably possible, then the injured person, someone acting for the injured person or other claimant may bring an action against us, in which the sole question is whether the denial of coverage or nonadmission of liability is based on the failure to provide notice as soon as reasonably possible.

   However, the injured person, someone acting for the injured person or other claimant may not bring an action if, within 60 days after we deny coverage or do not admit liability for damages because of "bodily injury", we or an "insured":

   a. Brings an action to declare the rights of the parties under the policy; and

   b. Names the injured person, someone acting for the injured person or other claimant as a party to the action.

5. If we fail to pay for damages because of "bodily injury" or "property damage" caused by an "occurrence" within 30 days after serving of notice of entry of judgment upon the "insured" and us, then an action may be maintained against us for the amount of the judgment, up to the Limit of Liability.

However, this does not apply during a stay or limited stay of execution against the "insured" on such judgment.

K. **Concealment Or Fraud** is replaced by the following:

K. **Concealment Or Fraud**

We do not provide coverage for the "insured" who, whether before or after a loss, has:

1. Intentionally concealed or misrepresented any material fact or circumstance; or

2. Engaged in fraudulent conduct;

relating to this insurance.

All other provisions of this policy apply.

 © Insurance Services Office, Inc., 2009 **DL 25 31 02 10**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PREMISES LIABILITY
### (Non-Owner Occupied Dwelling)

#### SCHEDULE*

| |
|---|
| Location* |
| |
| Number of Families* |
| |

*Entries may be left blank if shown elsewhere in this policy for this coverage.

### DEFINITIONS

Definition **6.** "Insured location" is extended to include the premises shown in the Schedule above.

### LIABILITY COVERAGES

Coverage **L** – Personal Liability and Coverage **M** – Medical Payments To Others are restricted to apply only with respect to "bodily injury" and "property damage" arising out of the ownership, maintenance, occupancy or use of the premises shown below.

### EXCLUSIONS

Exclusion **E.2.** does not apply to the premises shown in the Schedule.

All other provisions of this policy apply.

© ISO Properties, Inc., 2002

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MODIFIED FUNCTIONAL REPLACEMENT COST
# LOSS SETTLEMENT
### FORMS DP 00 02 AND DP 00 03 ONLY

**CONDITIONS**

The following definition is added when this endorsement is attached to the policy:

"Functional replacement cost" means the amount which it would cost to repair or replace the damaged building with less costly common construction materials and methods which are functionally equivalent to obsolete, antique or custom construction materials and methods used in the original construction of the building.

**E. Loss Settlement**

Paragraph **2.** is deleted and replaced by the following:

2. Buildings covered under Coverage **A** or **B:**

   a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the "functional replacement cost" of the building immediately before the loss; and you contract for repair or replacement of the damaged building for the same use, within 180 days of the damage unless we and you otherwise agree, we will pay, after application of any deductible, the lesser of the following amounts:

      (1) The limit of liability under this policy that applies to the building; or

      (2) The necessary amount actually spent to repair or replace the damaged building on a "functional replacement cost" basis. However, if this amount is less than the actual cash value of that part of the damaged building, we will settle the loss on an actual cash value basis.

   b. If you do not make claim under **2.a.** above, we will pay, after application of any deductible, the least of the following amounts:

      (1) The limit of liability under this policy that applies to the building; or

      (2) The actual cash value of the damaged part of the building.

   c. If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the "functional replacement cost" of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

      (1) The actual cash value of that part of the building damaged; or

      (2) That proportion of the cost to repair or replace:

         (a) After application of any deductible; and

         (b) Without deduction for depreciation;

         that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the "functional replacement cost" of the building.

   d. To determine the amount of insurance required to equal 80% of the "functional replacement cost" of the building immediately before the loss, do not include the value of:

      (1) Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

      (2) Those supports in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

      (3) Underground flues, pipes, wiring and drains.

© ISO Properties, Inc., 2002

**e.** If the actual cash value of the damage is less than the "functional replacement cost" then:

**(1)** We will pay no more than the actual cash value of the damage until replacement is complete. Once replacement is complete, we will settle the loss according to the provisions of **2.a.** and **c.** above.

However, if the cost to functionally repair the damage is both:

**(a)** Less than 5% of the amount of insurance in this policy on the building; and

**(b)** Less than $2,500;

we will settle the loss according to the provisions of **2.a.** and **c.** above whether or not replacement is complete.

**2.** You may disregard the "functional replacement cost" loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis.

You may then make claim for any additional liability according to the provisions of this Condition **E.** Loss Settlement, provided you notify us of your intent to do so within 180 days of the date of loss.

All other provisions of this policy apply.

© ISO Properties, Inc., 2002 **DP 05 31 12 02**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL PROVISIONS – NEW YORK

**PERILS INSURED AGAINST**

**Form DP 00 02 Only**

**8. Vandalism Or Malicious Mischief** is deleted and replaced by the following:

**8. Vandalism Or Malicious Mischief**

This peril does not include loss:

**a.** By pilferage, theft, burglary or larceny; or

**b.** To property on the Described Location if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

**Form DP 00 03 Only**

Under **A. Coverage A – Dwelling** and **Coverage B – Other Structures,** Paragraph **2.c.** is deleted and replaced by the following:

**c.** Caused by:

**(1)** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

**(a)** Maintain heat in the building; or

**(b)** Shut off the water supply and drain all systems and appliances of water;

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment; or a roof drain, gutter, downspout or similar fixtures or equipment.

**(2)** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

**(a)** Fence, pavement, patio or swimming pool;

**(b)** Footing, foundation, bulkhead, wall, or any other structure or device, that supports all or part of a building or other structure;

**(c)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

**(d)** Pier, wharf or dock;

**(3)** Theft of property not part of a covered building or structure;

**(4)** Theft in or to a dwelling or structure under construction;

**(5)** Wind, hail, ice, snow or sleet to:

**(a)** Outdoor radio and television antennas and aerials including their lead-in wiring, masts or towers; or

**(b)** Trees, shrubs, plants or lawns;

**(6)** Vandalism and malicious mischief, theft or attempted theft if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

**(7)** Constant or repeated seepage or leakage of water or steam over a period of weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance;

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

(8) Any of the following:

    (a) Wear and tear, marring, deterioration;

    (b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

    (c) Smog, rust or other corrosion, mold, wet or dry rot;

    (d) Smoke from agricultural smudging or industrial operations;

    (e) Discharge, dispersal, seepage, migration release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage **C** of this policy.

    (This change to Paragraph **2.c.(8)(e)** also applies to Special Coverage Endorsement **DP 04 82** if that endorsement has been made part of this policy.)

    (f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings; or

    (g) Birds, vermin, rodents, insects or domestic animals.

**Exception To c.(8)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:

    (i) Storm drain, or water, steam or sewer pipe, off the Described Location; or

    (ii) Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the Described Location. This includes the cost to tear out and replace any part of a building, or other structure, on the Described Location, but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the Described Location.

We do not cover loss to the system or appliance from which this water or steam escaped.

For the purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment; or roof drain, gutter, down spout or similar fixtures or equipment.

General Exclusion **A.3. Water Damage,** Paragraphs **a.** and **c.** that apply to surface water and water below the surface of ground do not apply to loss by water covered under **c.(8)** above.

Under **2.b.** and **c.** above, any ensuing loss to property described in Coverages **A** and **B** not excluded or excepted in this policy is covered.

**GENERAL EXCLUSIONS**

8. **Intentional Loss** is deleted and replaced by the following:

8. **Intentional Loss** means any loss arising out of an act a person insured under this policy commits or conspires to commit with the intent to cause a loss.

This exclusion only applies to a person insured under this policy who commits or conspires to commit an act with the intent to cause a loss.

(This is Paragraph **A.8.** in Forms **DP 00 01** and **DP 00 03.**)

**CONDITIONS**

C. **Concealment Or Fraud** is deleted and replaced by the following:

C. **Concealment Or Fraud**

We provide coverage to no persons insured under this policy if, whether before or after a loss, you have:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct;

relating to this insurance.

L. **Loss Payment**

The following paragraph is added and applies only to policies covering three- and four-family dwellings:

Prior to the payment of any proceeds to you for a premises loss caused by fire, we will deduct and pay the claim of any tax district which renders a certificate of lien to us as required by New York Insurance Law. We will not be obligated to pay you the amount we are required to pay on the lien. If we make payment of this lien within thirty days after receiving the certificate of lien, the claim will be considered valid and properly paid. We will deduct the amount paid from our final settlement with you.

(This is Condition **M.** in Form **DP 00 01.**)

     © ISO Properties, Inc., 2003      **DP 01 31 12 04**

## P. Cancellation

Paragraph **2.** is deleted and replaced by the following:

**2.** We may cancel the entire policy only for the reasons stated in this condition. The cancellation notice will be mailed to you at the address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

**a.** When you have not paid the premium, we may cancel the entire policy at any time by mailing to you at least 15 days' notice of cancellation.

**b.** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel the entire policy for any reason by letting you know at least 30 days before the date cancellation takes place.

**c.** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel the entire policy only for one or more of the following reasons by notifying you at least 30 days prior to the proposed cancellation date:

**(1)** Conviction of a crime arising out of acts increasing the hazard insured against;

**(2)** Discovery of fraud or material misrepresentation in obtaining the policy or in the presentation of a claim thereunder;

**(3)** Discovery of willful or reckless acts or omissions increasing the hazard insured against;

**(4)** Physical changes in the property insured occurring after issuance or last annual anniversary date of the policy which result in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the policy was issued or last voluntarily renewed; or

**(5)** A determination by the Superintendent of Insurance that the continuation of the policy would violate or would place us in violation of the New York Insurance Law.

If one of the reasons listed in this Paragraph **c.** exists, we may cancel the entire policy.

**d.** When the property covered by this policy is subject to the Anti-Arson Application in accordance with New York Insurance Department Regulation No. 96, the following provisions are added:

If you fail to return the completed, signed and affirmed Anti-Arson Application to us:

**(1)** Or our broker or agent within 45 days of the effective date of a new policy, we will cancel the entire policy by giving 20 days written notice to you and to the mortgageholder shown in the Declarations.

**(2)** Before the annual renewal date of any policy, we will cancel the policy by giving written notice to you and to the mortgageholder shown in the Declarations at least 15 days before the effective date of cancellation.

**e.** If we have the right to cancel, we may, instead of cancelling this policy, amend the limits of liability or reduce coverage not required by law. If we take this action, we will notify you by mail at least 20 days prior to the date of such change.

Delivery of such written notice by us to you at the mailing address shown in the Declarations or at a forwarding address will be equivalent to mailing.

Paragraph **3.** is deleted and replaced by the following:

**3.** When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

However, when the premium is advanced under a premium finance agreement, we may retain a minimum earned premium on the policy of 10% of the total policy premium or $60, whichever is greater.

(This is Condition **Q.** in Form **DP 00 01.**)

**Q. Nonrenewal** is deleted and replaced by the following:

## Q. Nonrenewal

We will not refuse to renew or condition our renewal of this policy except as allowed by the laws of the State of New York. The conditions may include, but are not limited to, amending the limits of liability or reducing coverage not required by law. If we take this action, we will notify you by mail at least 45 days, but not more than 60 days prior to the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

Delivery of such written notice by us to you at the mailing address shown in the Declarations or at a forwarding address shall be equivalent to mailing.

(This is Condition **R.** in Form **DP 00 01.**)

The following Condition is added:

## Z. Estimation Of Claims

Upon request, we will furnish you, or your representative, with a written estimate of damages to real property, specifying all deductions, provided such an estimate has been prepared by us or has been prepared on our behalf for our own purposes. This estimate will be provided within thirty days after your request or its preparation, whichever is later.

(This is Condition **AA.** in Form **DP 00 01.**)

All other provisions of this policy apply.

© ISO Properties, Inc., 2003
DP 01 31 12 04

# PERSONAL LIABILITY

## AGREEMENT

We will provide the insurance described in this Policy in return for the premium and compliance with all applicable provisions of this Policy.

## DEFINITIONS

A. In this Policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the company providing this insurance.

B. In addition, certain words and phrases are defined as follows:

1. "Aircraft liability", "hovercraft liability", "motor vehicle liability" and "watercraft liability", subject to the provisions in **b.** below, mean the following:

   a. Liability for "bodily injury" or "property damage" arising out of the:

      (1) Ownership of such vehicle or craft by an "insured";

      (2) Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

      (3) Entrustment of such vehicle or craft by an "insured" to any person;

      (4) Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

      (5) Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

   b. For the purpose of this definition:

      (1) Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

      (2) Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

      (3) Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

      (4) Motor vehicle means a "motor vehicle" as defined in **7.** below.

2. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

3. "Business" means:

   a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   b. Any other activity engaged in for money or other compensation, except the following:

      (1) One or more activities, not described in (2) through (4) below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

      (2) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

      (3) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

      (4) The rendering of home day care services to a relative of an "insured".

4. "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

5. "Insured" means:

   a. You and residents of your household who are:

      (1) Your relatives; or

      (2) Other persons under the age of 21 and in your care or the care of a resident of your household who is your relative;

   b. A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

      (1) 24 and your relative; or

      (2) 21 and in your care or the care of a resident of your household who is your relative;

 © Insurance Services Office, Inc., 2013

c. With respect to animals or watercraft to which this Policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person described in **5.a.** or **b.** "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

d. With respect to a "motor vehicle" to which this Policy applies:

   (1) Persons while engaged in your employ or that of any person described in **5.a.** or **b.;** or

   (2) Other persons using the vehicle on an "insured location" with your consent.

Throughout this Policy, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

6. "Insured location" means:

   a. The "residence premises";

   b. The part of other premises, other structures and grounds used by you as a residence; and

      (1) Which is shown in the Declarations; or

      (2) Which is acquired by you during the policy period for your use as a residence;

   c. Any premises used by you in connection with a premises described in **a.** and **b.** above;

   d. Any part of a premises:

      (1) Not owned by an "insured"; and

      (2) Where an "insured" is temporarily residing;

   e. Vacant land, other than farm land, owned by or rented to an "insured";

   f. Land owned by or rented to an "insured" on which a one-, two-, three- or four-family dwelling is being built as a residence for an "insured";

   g. Individual or family cemetery plots or burial vaults of an "insured"; or

h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

7. "Motor vehicle" means:

   a. A self-propelled land or amphibious vehicle; or

   b. Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   a. "Bodily injury"; or

   b. "Property damage".

9. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

10. "Residence employee" means:

   a. An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

   b. One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

11. "Residence premises" means:

   a. The one-family dwelling where you reside;

   b. The two-, three- or four-family dwelling where you reside in at least one of the family units; or

   c. That part of any other building where you reside;

   and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

© Insurance Services Office, Inc., 2013

## LIABILITY COVERAGES

### A. Coverage L – Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

### B. Coverage M – Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured".

## EXCLUSIONS

### A. "Motor Vehicle Liability"

1. Coverages **L** and **M** do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

   a. Is registered for use on public roads or property;

   b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

   c. Is being:

      (1) Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

      (2) Rented to others;

      (3) Used to carry persons or cargo for a charge; or

      (4) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

2. If Exclusion **A.1.** does not apply, there is still no coverage for "motor vehicle liability", unless the "motor vehicle" is:

   a. In dead storage on an "insured location";

   b. Used solely to service a residence;

   c. Designed to assist the handicapped and, at the time of an "occurrence", it is:

      (1) Being used to assist a handicapped person; or

      (2) Parked on an "insured location";

   d. Designed for recreational use off public roads and:

      (1) Not owned by an "insured"; or

      (2) Owned by an "insured" provided the "occurrence" takes place:

         (a) On an "insured location" as defined in Definition **B.6.a., b., d., e.** or **h.**; or

         (b) Off an "insured location" and the "motor vehicle" is:

            (i) Designed as a toy vehicle for use by children under seven years of age;

            (ii) Powered by one or more batteries; and

            (iii) Not built or modified after manufacture to exceed a speed of five miles per hour on level ground;

© Insurance Services Office, Inc., 2013

**e.** A motorized golf cart that is owned by an "insured", designed to carry up to four persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

**(1)** A golfing facility and is parked or stored there, or being used by an "insured" to:

**(a)** Play the game of golf or for other recreational or leisure activity allowed by the facility;

**(b)** Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

**(c)** Cross public roads at designated points to access other parts of the golfing facility; or

**(2)** A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

**B. "Watercraft Liability"**

**1.** Coverages **L** and **M** do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

**a.** Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

**b.** Rented to others;

**c.** Used to carry persons or cargo for a charge; or

**d.** Used for any "business" purpose.

**2.** If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

**a.** Is stored;

**b.** Is a sailing vessel, with or without auxiliary power, that is:

**(1)** Less than 26 feet in overall length; or

**(2)** 26 feet or more in overall length and not owned by or rented to an "insured"; or

**c.** Is not a sailing vessel and is powered by:

**(1)** An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

**(a)** 50 horsepower or less and not owned by an "insured"; or

**(b)** More than 50 horsepower and not owned by or rented to an "insured"; or

**(2)** One or more outboard engines or motors with:

**(a)** 25 total horsepower or less;

**(b)** More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

**(c)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

**(d)** More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

**(i)** You declare them at policy inception; or

**(ii)** Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in **(c)** and **(d)** above apply for the policy period.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

**C. "Aircraft Liability"**

This Policy does not cover "aircraft liability".

**D. "Hovercraft Liability"**

This Policy does not cover "hovercraft liability".

**E. Coverage L – Personal Liability And Coverage M – Medical Payments To Others**

Coverages **L** and **M** do not apply to the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured", even if the resulting "bodily injury" or "property damage":

**a.** Is of a different kind, quality or degree than initially expected or intended; or

**b.** Is sustained by a different person, entity or property than initially expected or intended.

However, this Exclusion **E.1.** does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property;

© Insurance Services Office, Inc., 2013

2. "Business"

   a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

   This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

   b. This Exclusion **E.2.** does not apply to:

     **(1)** The rental or holding for rental of an "insured location";

       **(a)** On an occasional basis if used only as a residence;

       **(b)** In part for use only as a residence, unless a single-family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

       **(c)** In part, as an office, school, studio or private garage; and

     **(2)** An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

3. **Professional Services**

   "Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

4. **"Insured's" Premises Not An "Insured Location"**

   "Bodily injury" or "property damage" arising out of a premises:

   a. Owned by an "insured";

   b. Rented to an "insured"; or

   c. Rented to others by an "insured";

   that is not an "insured location";

5. **War**

   "Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

   a. Undeclared war, civil war, insurrection, rebellion or revolution;

   b. Warlike act by a military force or military personnel; or

   c. Destruction, seizure or use for a military purpose.

   Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

6. **Communicable Disease**

   "Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

7. **Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

   "Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

8. **Controlled Substance**

   "Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the lawful orders of a licensed health care professional.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Aircraft Liability", **D.** "Hovercraft Liability" and **E.4.** "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

F. **Coverage L – Personal Liability**

Coverage **L** does not apply to:

1. Liability:

   a. For any loss assessment charged against you as a member of an association, corporation or community of property owners;

   b. Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

     **(1)** That directly relate to the ownership, maintenance or use of an "insured location"; or

     **(2)** Where the liability of others is assumed by you prior to an "occurrence";

     unless excluded in **a.** above or elsewhere in this Policy;

 © Insurance Services Office, Inc., 2013

2. "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

3. "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

4. "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

   a. Workers' compensation law;

   b. Non-occupational disability law; or

   c. Occupational disease law;

5. "Bodily injury" or "property damage" for which an "insured" under this Policy:

   a. Is also an insured under a nuclear energy liability policy issued by the:

      (1) Nuclear Energy Liability Insurance Association;

      (2) Mutual Atomic Energy Liability Underwriters;

      (3) Nuclear Insurance Association of Canada;

      or any of their successors; or

   b. Would be an insured under such a policy but for the exhaustion of its limit of liability; or

6. "Bodily injury" to you or an "insured" as defined under Definition 5.a. or b.

   This exclusion also applies to any claim made or suit brought against you or an "insured" to:

   a. Repay; or

   b. Share damages with;

   another person who may be obligated to pay damages because of "bodily injury" to an "insured".

G. Coverage M – Medical Payments To Others

   Coverage M does not apply to "bodily injury":

   1. To a "residence employee" if the "bodily injury":

      a. Occurs off the "insured location"; and

      b. Does not arise out of or in the course of the "residence employee's" employment by an "insured";

2. To any person eligible to receive benefits voluntarily provided or required to be provided under any:

   a. Workers' compensation law;

   b. Non-occupational disability law; or

   c. Occupational disease law;

3. From any:

   a. Nuclear reaction;

   b. Nuclear radiation; or

   c. Radioactive contamination;

   all whether controlled or uncontrolled or however caused; or

   d. Any consequence of any of these; or

4. To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

A. Claim Expenses

   We pay:

   1. Expenses we incur and costs taxed against an "insured" in any suit we defend;

   2. Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage L limit of liability. We need not apply for or furnish any bond;

   3. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

   4. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

B. First Aid Expenses

   We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this Policy. We will not pay for first aid to an "insured".

C. Damage To Property Of Others

   1. We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

© Insurance Services Office, Inc., 2013

DL 24 01 07 14

2. We will not pay for "property damage":

   a. Caused intentionally by an "insured" who is 13 years of age or older;

   b. To property owned by an "insured";

   c. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

   d. Arising out of:

     (1) A "business" engaged in by an "insured";

     (2) Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

     (3) The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

      This Exclusion d.(3) does not apply to a "motor vehicle" that:

       (a) Is designed for recreational use off public roads;

       (b) Is not owned by an "insured"; and

       (c) At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

## CONDITIONS

### A. Limit Of Liability

Our total liability under Coverage **L** for all damages resulting from any one "occurrence" will not be more than the Coverage **L** Limit Of Liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage **M** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **M** Limit Of Liability shown in the Declarations.

### B. Severability Of Insurance

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

### C. Duties After "Occurrence"

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this Policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

   a. The identity of the Policy and the "named insured" shown in the Declarations;

   b. Reasonably available information on the time, place and circumstances of the "occurrence"; and

   c. Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

4. At our request, help us:

   a. To make settlement;

   b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

   c. With the conduct of suits and attend hearings and trials; and

   d. To secure and give evidence and obtain the attendance of witnesses;

5. With respect to Paragraph **C.** Damage To Property Of Others under Additional Coverages, submit to us within 60 days after the loss a sworn statement of loss and show the damaged property, if in an "insured's" control;

6. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

### D. Duties Of An Injured Person – Coverage M – Medical Payments To Others

1. The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

2. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

 © Insurance Services Office, Inc., 2013

**E. Payment Of Claim – Coverage M – Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

1. No action can be brought against us unless there has been full compliance with all of the terms under this Policy.

2. No one will have the right to join us as a party to any action against an "insured".

3. Also, no action with respect to Coverage **L** can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this Policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this Policy.

**I. Policy Period**

This Policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Subrogation**

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage **M** or Paragraph **C.** Damage To Property Of Others under Additional Coverages.

**K. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WATER EXCLUSION ENDORSEMENT

**GENERAL EXCLUSIONS**

3. **Water Damage** is replaced by the following:

   3. **Water**

     This means:

    **a.** Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

    **b.** Water which:

      **(1)** Backs up through sewers or drains; or

      **(2)** Overflows or is otherwise discharged from a sump, sump pump or related equipment;

    **c.** Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

    **d.** Waterborne material carried or otherwise moved by any of the water referred to in **3.a.** through **3.c.** of this Exclusion.

This Exclusion **(3.)** applies regardless of whether any of the above, in **3.a.** through **3.d.**, is caused by an act of nature or is otherwise caused.

This Exclusion **(3.)** applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

However, direct loss by fire or explosion resulting from any of the above, in **3.a.** through **3.d.**, is covered.

All other provisions of this policy apply.

## NO COVERAGE FOR HOME DAY CARE BUSINESS

If an "insured" regularly provides home day care services to a person or persons other than "insureds" and receives monetary or other compensation for such services, that enterprise is a "business" pursuit. Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an "insured" to a relative of an "insured" is not considered a "business" pursuit.

Therefore, with respect to a home day care enterprise which is considered to be a "business" pursuit, this policy does not provide coverage, because "business" pursuits of an "insured" are excluded under Exclusion 1.b.

**THIS ENDORSEMENT DOES NOT CONSTITUTE A REDUCTION OF COVERAGE.**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WORKERS' COMPENSATION
# CERTAIN RESIDENCE EMPLOYEES – NEW YORK

We agree, with respect to covered "residence employees":

### WHO IS COVERED

A covered "residence employee" under this endorsement is a "residence employee" who is engaged in regular employment of less than 40 hours per week or is engaged in casual employment.

However, as stated in New York Insurance Law Section 3420(j)(1), coverage does not apply to an employee who is not required, under New York Workers' Compensation Law, to be covered. Attachment of this endorsement does not constitute a voluntary election of coverage under New York Workers' Compensation Law.

### UNDER COVERAGE I

To pay when due all benefits required of an "insured" by the New York Workers' Compensation Law; and

### UNDER COVERAGE II

To pay on behalf of an "insured" all damages for which the "insured" is legally liable because of "bodily injury" sustained by a covered "residence employee". The "bodily injury" must be caused by accident or disease and arise out of and in the course of employment by the "insured" while:

a. In the United States of America, its territories or possessions, or Canada; or

b. Temporarily elsewhere if the "residence employee" is a citizen or resident of the United States or Canada.

### APPLICATION OF COVERAGE

This insurance applies only to "bodily injury" which occurs during the policy period. If the "bodily injury" is a disease, it must be caused or aggravated by the conditions of the covered "residence employee's" employment by the "insured".

The covered "residence employee's" last day of last exposure to the conditions causing or aggravating such "bodily injury" by disease must occur during the policy period.

### POLICY PROVISIONS

This insurance is subject to all the provisions of this endorsement and the following provisions of this policy:

1. Under the policy Conditions:

   B. Waiver or Change of Policy Provisions.

   C. Assignment.

   E. Cancellation.

2. Under Form **DL 24 01**:

   a. The definition of "bodily injury", "business", "insured" and "residence employee".

   b. Our agreement to defend the "insured" as provided under Coverage **L** – Personal Liability.

3. Under the Additional Coverages:

   A. Claim Expenses.

4. The following Conditions:

   C. Duties After "Occurrence".

   F. Suit Against Us.

   G. Bankruptcy Of An Insured.

   J. Subrogation.

### ADDITIONAL PROVISIONS APPLICABLE TO COVERAGE I

The following provisions are applicable to Coverage I:

a. As between the covered "residence employee" and us, notice to or knowledge of the occurrence of the injury on the part of an "insured" will be deemed notice or knowledge on our part.

b. The jurisdiction of an "insured" will, for the purpose of the law imposing liability for compensation, be our jurisdiction.

© ISO Properties, Inc., 2003

## ADDITIONAL PROVISIONS APPLICABLE TO COVERAGE II

Coverage II does not apply to any suit brought in or judgment rendered by any court outside the United States of America, its territories and possessions, or Canada, or to any action on such judgment.

## LIMITS OF LIABILITY COVERAGE II

We may not limit our liability to pay damages for which we become legally liable to pay because of "bodily injury" to an "insured's" covered "residence employees" if the "bodily injury" arises out of and in the course of employment that is subject to and is compensable under the Workers' Compensation Law of New York.

## OTHER INSURANCE

If a loss covered by this insurance is also covered by other insurance, we will not pay more than our share of benefits and costs. The shares of all applicable insurance will be equal until the loss is paid. However, if a loss covered by this insurance is also covered by insurance written to cover business employees of an "insured" who is sole proprietor, this insurance is primary.

## CONFORMITY TO STATUTE

If any term of this insurance is in conflict with the New York Workers' Compensation Law, such term is amended by this statement to conform to that law.

## EXCLUSIONS

This policy does not apply:

a. To liability for "bodily injury" arising out of "business" pursuits of an "insured".

b. Under Coverage II:

1. To liability assumed by the "insured" under any contract or agreement.

2. To any obligation under a workers' compensation, unemployment or disability benefits law or any similar law.

3. To punitive or exemplary damage because of "bodily injury" to a covered "residence employee" employed in violation of law.

4. To "bodily injury" to a covered "residence employee" employed in violation of law with the knowledge of an "insured".

5. To "bodily injury" intentionally caused or aggravated by an "insured".

6. To damages arising out of the unlawful discharge or coercion of, or unlawful discrimination against, a covered "residence employee".

 © ISO Properties, Inc., 2003 **DL 24 15 12 04**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WATER BACK-UP AND SUMP DISCHARGE OR OVERFLOW – NEW YORK

## A. Coverage

We insure, up to $5,000, for direct physical loss not caused by "your" negligence, or that of a person insured under this policy, other than an insured minor or unemancipated child, to covered property caused by water or waterborne material which:

1. Backs up through sewers or drains; or

2. Overflows or is discharged from a:

   a. Sump, sump pump; or

   b. Related equipment;

   even if such overflow or discharge results from mechanical breakdown. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown.

This coverage does not increase the limits of liability for Coverages **A, B, C** or **D** stated in the Declarations.

## B. Perils Insured Against

With respect to the coverage described in **A.** above, Paragraphs:

**A.2.c.(8)(b)** in Form **DP 00 03;** and

**2.c.(8)(b)** in Form **DP 04 82**

are replaced by the following:

Latent defect, inherent vice or any quality in property that causes it to damage or destroy itself.

## C. Special Deductible

The following deductible provision replaces any other deductible provision in the policy with respect to loss covered under this endorsement.

We will pay only that part of the total of all loss payable which exceeds $250. No other deductible applies to this coverage. This deductible does not apply with respect to Coverage **D** – Fair Rental Value and, if covered, Coverage **E** – Additional Living Expense.

## D. General Exclusions

**Water Damage** is replaced by the following:

3. **Water**

   This means:

   a. Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

   b. Water which:

      (1) Backs up through sewers or drains or;

      (2) Overflows or is otherwise discharged from a sump, sump pump or related equipment;

      as a direct or indirect result of flood;

   c. Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

   d. Waterborne material carried or otherwise moved by any of the water referred to in **D.3.a.** through **D.3.c.** of this Exclusion.

This Exclusion applies regardless of whether any of the above, in **D.3.a.** through **D.3.d.**, is caused by an act of nature or is otherwise caused.

This Exclusion applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

However, direct loss by fire or explosion resulting from any of the above, in **D.3.a.** through **D.3.d.**, is covered.

(In Forms **DP 00 01** and **DP 00 03**, this is Paragraph **A.3.**)

All other provisions of this policy apply.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WINDSTORM DEDUCTIBLE – NEW YORK CATASTROPHE PERCENTAGE AND NON-CATASTROPHE FIXED-DOLLAR

### SCHEDULE

---

**1. Windstorm Deductible Percentage Amount:** 2%  ( $11,600 )

**2. Non-Catastrophe Windstorm Deductible Fixed Dollar Amount:** $2,500

---

Entries may be left blank if shown elsewhere in this policy for this coverage.

**DEDUCTIBLE**

The following special deductible is added to the policy:

With respect to the peril of Windstorm, we will pay only that part of the total of all loss payable under Coverages that exceeds the windstorm deductible amounts noted below.

1. A percentage deductible applies to windstorm loss that occurs within a period of 12 hours before or 12 hours after the storm which caused the loss makes landfall anywhere in New York State as a declared Category 2, 3, 4 or 5 hurricane. The dollar amount of the windstorm deductible is determined by multiplying the Coverage **A** or **B** limit of liability shown in the declarations by the percentage amount shown in the Schedule above.

   a. "Declared" means declared by the National Weather Service.

   b. This deductible amount does not apply to loss under **Coverage D – Fair Rental Value** and, if provided in this policy, **Coverage E – Additional Living Expenses.** Instead, if the amount actually deducted from a loss described in this Paragraph **1.** is:

   (1) The same or more than the deductible amount stated in Paragraph **2.**, then no deductible will apply to a loss under Coverages **D** and **E**; or

   (2) Less than the deductible amount stated in Paragraph **2.**, then the deductible amount that applies to a loss under Coverages **D** and **E** will be the difference between the amount actually deducted, as described in this Paragraph **1.**, and the deductible set forth in Paragraph **2.** below.

   c. The National Weather Service currently uses the Saffir/Simpson Hurricane Scale to categorize hurricanes. This scale specifies that a Category 2 hurricane is a storm that originates in the tropics and results in either a sustained wind speed of at least 96 miles per hour or a storm surge of at least 6 feet above normal. This scale also sets forth criteria for Categories 3, 4 and 5 hurricanes, which have greater associated wind speeds and storm surges.

2. A fixed dollar deductible is the deductible that applies to windstorm loss if the circumstances of the loss, described in Paragraph **1.**, above do not apply. The dollar amount of the windstorm deductible is shown in the Schedule above.

No other deductible in the policy applies to loss caused by windstorm or hail.

All other provisions of this policy apply.

# PERSONAL LIABILITY SCHEDULE

This endorsement is made part of policy number     DPNY2019060217-23      of the
Hyundai Marine & Fire Insurance Co.,    Insurance Company.
Ltd. (U.S. Branch)

The insurance afforded by this endorsement shall apply as indicated below, subject to the terms and conditions of the Policy that apply.

| Coverages | Limit Of Liability | | Premium |
|---|---|---|---|
| L – Personal Liability | $   1,000,000.00 | Each Occurrence | $   279.00 |
| M – Medical Payments | $   1,000.00 | Each Person | $   Included |

**Other Insured Locations:**

Other Charges   $
Total   $

## Countersignature Of Authorized Representative

**Name:**     C&M First Services Inc.

**Title:**

**Signature:**

**Date:**

**Attach Coverage Part**

© Insurance Services Office, Inc., 2013

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEFERRED PREMIUM PAYMENT

You have elected to pay the premium in installments as shown in the Declarations, and the premium is made so payable. In the event of any changes in the premiums, which are in effect for us and that apply to this insurance after the date of this policy, you agree to pay each annual installment calculated at the annual premiums then in effect.

All other provisions of this policy apply.

# CLAIM REPORTING PROCEDURES

Hyundai Marine & Fire Insurance Company has partnered with Sedgwick to represent Hyundai as our third party administrator (TPA) to handle the claims. Sedgwick is authorized claim administrator on behalf of Hyundai Marine & Fire Insurance and all claims regardless of severity or location should be reported as soon as claim occurs. You can submit a claim by email or telephone.

1. Email: hyundailoss@sedgwick.com

2. Telephone: 855-436-3467 (ext. 1)

## Important!

Please include the following when submitting a claim by email.

- Policy number
- Name
- Contact information
- Date of loss
- Location of loss
- General description of loss